# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

| | |
|---|---|
| LUCIA F. SANCHEZ; MICHAEL F. SANCHEZ JR.; ERIK BRIONES; RICHARD JENKINS; and ROLAND RIVERA; | No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| RAÚL TORREZ, in his official capacity as Attorney General of New Mexico; RICHARD STUMP, in his official capacity as Chair of the New Mexico State Game Commission; SHARON SALAZAR HICKEY, in her official capacity as Vice-Chair of the New Mexico State Game Commission; TIRZIO LOPEZ, in his official capacity as a member of the New Mexico State Game Commission; GREGG FULFER, in his official capacity as a member of the New Mexico State Game Commission; DR. SABRINA PACK, in her official capacity as a member of the New Mexico State Game Commission; EDWARD GARCIA, in his official capacity as a member of the New Mexico State Game Commission; FERNANDO CLEMENTE JR., in his official capacity as a member of the New Mexico State Game Commission, and MICHAEL SLOANE, in his official capacity as Director of the New Mexico Department of Game & Fish, | |
| Defendants. | |

# INTRODUCTION

1.     Longstanding New Mexico law holds that private landowners may own the beds of non-navigable streams within the State. Many New Mexicans can trace their title to these stream

1

and riverbeds back to New Mexico's territorial days. They take pride in preserving the natural beauty of these waterways. Many have made substantial improvements that help foster a habitat for fish and other life in the rivers. The owners' investments in their land were made possible because New Mexico law recognized not only that the streambeds were private property, but that owners had the right to exclude the public from using the beds. Without the fundamental right to exclude, private owners would not have been able to maintain these improvements.

2.      In 2022, the New Mexico Supreme Court for the first time declared that the State constitution protects the public's right to walk or wade on privately-held streambeds. *Adobe Whitewater Club of N.M. v. N.M. State Game Comm'n*, 519 P.3d 46, 53 (N.M. 2022). According to the court, the state constitution's public trust doctrine—which guarantees the right of the public to fish or recreate in public waters—also grants the public the right to walk or wade on private streambeds. *Id.* Although the public trust doctrine typically applies only to waters *navigable* at statehood, the court reasoned that this only precluded public *ownership* of the beds, not public *access*. *Id.* at 54.

3.      The Court's declaration upended decades of well-established New Mexico law. That private owners of streambeds held the right to exclude trespassers from walking and wading had never been in serious dispute. Before *Adobe Whitewater*, all three branches of New Mexico government had recognized that right. But afterwards, the executive branch moved quickly to enforce the public's newfound rights to trespass upon riverbeds. The New Mexico Attorney General, the New Mexico Game Commission, and the Department of Game & Fish have taken action against property owners who continue to exercise their right to exclude. Under the authority of *Adobe Whitewater*, the State has extinguished these owners' long-held property rights.

4.      Plaintiffs are property owners in San Miguel and Rio Arriba Counties. They own properties that include the beds of the Pecos and the Rio Tusas. These are non-navigable streams and there is no dispute that the Plaintiffs hold title to the streambeds. All are committed to responsible stewardship of their land, conservation, and environmental preservation. Part of that commitment involves exercising their right to exclude trespassers from the streambeds, as members of the public often do not treat the land with the same respect. But under *Adobe Whitewater*, none of these individuals may lawfully exclude the public from fishing or engaging in recreation on their private riverbeds.

5.      Plaintiffs do not seek to divest members of the public of any right that the public has always possessed. Plaintiffs recognize the public nature of the *waters* even in non-navigable streams. They merely seek to assert the traditional right New Mexicans have had to exclude trespassers from their privately-held streambeds. *Adobe Whitewater*'s declaration of public recreational and fishing rights on these streambeds worked a radical change in New Mexico law which the State cannot accomplish without paying just compensation to the owners of the beds. Until such compensation is offered, state actors must be enjoined from taking action against owners asserting their property rights.

## JURISDICTION AND VENUE

6.      This action arises under the Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment. This Court has jurisdiction through 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

7.      Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), actions against State officials seeking prospective injunctive relief are not barred by sovereign immunity.

8.      Plaintiffs assert the right to exclude trespassers from their privately-held non-navigable streambeds. Following the New Mexico Supreme Court's decision in *Adobe Whitewater*, Defendant state actors claim the power to prohibit Plaintiffs from exercising their property rights. Defendants have already taken action against some property owners for doing so, and there is an imminent danger that Defendants will continue acting under this power to deprive additional owners of their property rights. Therefore, a present and concrete controversy exists between the parties.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2). Plaintiffs and Defendants all reside within this district and the property subject to this action is situated here.

**PARTIES**

**Plaintiffs**

10.      Lucia F. Sanchez is a resident of Rio Arriba County, New Mexico. She is employed as a land planner for the Ohkay Owingeh Pueblo. As tenant-in-common with her brother Michael F. Sanchez Jr., she owns a ranch of about 80 acres in the county. The Rio Tusas, a non-navigable river, runs through the Sanchez parcel, and the Sanchez siblings have title to the streambed. The land has been in the Sanchez family since 1942, when it was acquired via a land patent from the United States government. Lucia and Michael inherited the property from their father, Michael F. Sanchez Sr, upon his death in 2018. Lucia and Michael are ranchers and raise cattle on the land as their father did. They are dedicated to being good stewards of their land and

4

view the ranch as essential to their culture and family's history. To that end, the family has done

stream improvements over the years that have improved the habitat for area fish.

11.   Michael F. Sanchez Jr. is a sheriff's deputy in Santa Fe County, New Mexico. He

owns the parcel described above as a tenant-in-common with his sister, Lucia. Like her, Michael

is dedicated to preserving the family's ranch, including protecting it from trespassing by members

of the public who do not share the same care for the land.

12.   Roland Rivera owns about 2.5 acres in Tererro, New Mexico—a small

unincorporated community in San Miguel County. He holds joint ownership with his nephew. A

fifth-generation New Mexican, Roland's great-great grandfather acquired 160 acres in the area

through a homestead patent from the United States government in 1888—decades before New

Mexico achieved statehood. The property has since been subdivided into many parcels and Roland

inherited his parcel from a relative in 2006. A portion of the non-navigable Pecos River runs

through the property, and Roland's title includes the streambed of the Pecos. He has a small cabin

on the land and uses it for recreation with his family. Since the New Mexico Supreme Court

declared the public right to walk and wade along privately-owned streambeds, Roland has not been

able to tell members of the public to leave his property despite his ownership and his display of

signage. Members of the public leave trash and occasionally bathe nude in the river, severely

curtailing his enjoyment of his property.

13.   Erik Briones owns about 27.5 acres of land along New Mexico Highway 63 in

Tererro. The parcel, which he purchased in 2023, derives from the initial 160-acre homestead

patent issued to Plaintiff Rivera's great-great grandfather in 1888. A portion of the non-navigable

Pecos River runs through the property, and Erik's title includes the streambed of the Pecos. Before

his purchase, the section of the river running through his parcel was certified by the New Mexico Game Commission as private, non-navigable streambed. He takes pride in preserving and maintaining the land and the river. He has done stream improvements that have encouraged a robust habitat for trout and other fish—it is these improvements that make his property such a desirable fishing location. Public access to his private streambed not only makes these improvements more costly and difficult to maintain, but destroys his privacy and results in the public leaving trash on his land.

14.    Richard (Rick) Jenkins, along with two relatives, owns about 2.5 acres of land adjacent to the Briones parcel which also contains a portion of the non-navigable Pecos River. His title is likewise derived from the 1888 homestead patent and includes the streambed within the parcel's boundaries. He purchased the property in 1984 and he and his family have since used it for recreation and fishing. Like the other Plaintiffs, Rick is a steward of the land and dedicated to preserving the natural beauty of the river and its status as a habitat for fish. Rick's property is within about a quarter mile of a public parking and recreation area that is slated to open this year. Without the right to exclude trespassers, Rick and his family will have little recourse to prevent trespassers from invading Rick's private streambed, leaving trash and destroying the family's privacy.

**Defendants**

15.    Defendant Raúl Torrez is the Attorney General of New Mexico. He is charged with enforcing the laws of the State of New Mexico. In addition to his general duty to enforce the law, Attorney General Torrez's office has taken active steps to enforce the New Mexico Supreme

Court's decree that the public has the right to walk and wade on private streambeds like Plaintiffs'.[1] These steps include suing Plaintiff Briones and, through a designated representative, issuing threats to Plaintiff Jenkins for exercising their right to exclude the public from their private streambeds. Defendant Torrez is sued in his official capacity.

16.    Defendant Richard Stump is the Chair of the New Mexico State Game Commission. The Commission directs the operation of and sets the agenda for the New Mexico Department of Game & Fish through its supervision of the Department's director. *See* N.M. Stat. §§ 17-1-2, 17-1-5. It also has the power to set rules and regulations relating to hunting and fishing. *See* N.M. Stat. § 17-1-26.[2] The Commission and the Department have taken concrete actions to enforce the New Mexico Supreme Court's decree that the public has the right to walk and wade on private streambeds like Plaintiffs'. The Commission has changed its position on the private nature of streambeds and no longer protects landowners' right to exclude the public from their private streambeds. Defendant Stump is sued in his official capacity.

17.    Defendant Sharon Salazar Hickey is the Vice-Chair of the New Mexico State Game Commission.[3] Defendant Salazar Hickey is sued in her official capacity.

---

[1] Press Release, New Mexico Dep't of Justice, *New Mexico Attorney General Raúl Torrez Announces Effort to Ensure Public Access to Rivers and Streams in New Mexico*, Aug. 7, 2023, *available at* https://nmdoj.gov/press-release/new-mexico-attorney-general-raul-torrez-announces-effort-to-ensure-public-access-to-rivers-and-streams-in-new-mexico/.

[2] According to the Department website, the Commission "sets hunting and fishing regulations, hires the Department of Game and Fish director, oversees spending of a more than $35 million annual budget, and sets the department's overall direction." New Mexico Dep't of Game & Fish, *New Mexico State Game Commission*, https://www.wildlife.state.nm.us/commission/ (last visited June 20, 2024).

[3] Plaintiffs incorporate the description of the Commission and its powers from Paragraph 16 into all subsequent paragraphs regarding the Commissioner defendants (Paragraphs 17–22).

18.     Defendant Tirzio Lopez is a member of the New Mexico State Game Commission. Defendant Lopez is sued in his official capacity.

19.     Defendant Gregg Fulfer is a member of the New Mexico State Game Commission. Defendant Fulfer is sued in his official capacity.

20.     Defendant Dr. Sabrina Pack is a member of the New Mexico State Game Commission. Defendant Pack is sued in her official capacity.

21.     Defendant Edward Garcia is a member of the New Mexico State Game Commission. Defendant Garcia is sued in his official capacity.

22.     Defendant Fernando Clemente Jr. is a member of the New Mexico State Game Commission. Defendant Clemente Jr. is sued in his official capacity.

23.     Defendant Michael Sloane is the Director of the New Mexico Department of Game & Fish. The Director is employed by the Game Commission and has the power to "employ such conservation officers, clerks and other employees as he shall deem proper and necessary to enforce and administer the laws and regulations relating to game and fish." N.M. Stat. § 17-1-5(A). He serves at the pleasure of the Commission and has the power to discharge Department employees. *Id.* § 17-1-5(A)–(B). Along with the Commission, the Department has taken active steps to enforce the New Mexico Supreme Court's decree that the public has the right to walk and wade on private streambeds like Plaintiffs'. Defendant Sloane is sued in his official capacity.

## FACTUAL ALLEGATIONS

24.     Prior to European settlement, various Native American tribes, principally the Pueblo, inhabited New Mexico.

25.    In the sixteenth century, Spanish settlers moved across the Rio Grande after conquering the Aztec Empire in modern-day Mexico. The first Spanish settlement in present-day New Mexico was established on the Rio Grande at San Gabriel de Yungue-Ouinge in 1598.

26.    New Mexico remained under Spanish dominion until 1821, when victory in the Mexican War of Independence transferred sovereignty over the area to Mexico.

27.    In 1848, the United States defeated Mexico in the Mexican-American War. As part of the Treaty of Guadalupe Hidalgo that settled the war, New Mexico became a territory of the United States.

28.    Under the terms of the treaty, the United States agreed to respect the property rights of Mexican citizens in the territory. *See State ex rel. State Game Comm'n v. Red River Valley Co.*, 182 P.2d 421, 457 (N.M. 1945) (opinion denying motion for rehearing).

29.    In 1907, the Territorial Legislature enacted a statute declaring all "natural waters flowing in streams and watercourses . . . belong to the public and are subject to appropriation for beneficial use." N.M.S.A. 1978, § 72-1-1 (1907). When New Mexico achieved statehood in 1912, this provision was incorporated into the State constitution as Article XVI, Section 2.

30.    At statehood, New Mexico entered the union on equal footing with the then-existing States. The State then obtained title to the beds of all waters within its boundaries that were navigable-in-fact at the time, while the United States retained title to all land beneath waters not then navigable. *See PPL Montana, LLC v. Montana*, 565 U.S. 576, 591 (2012).

31.    As to lands that New Mexico obtained at statehood, the State retained the right to "allocate and govern those lands according to state law," subject only to the federal government's interest in navigation for the purposes of interstate commerce. *Id.*

32.    The beds of non-navigable streams never passed into State ownership. Because the streams running through all Plaintiffs' properties are non-navigable-in-fact, Plaintiffs' titles include ownership of the streambeds.

33.    In *Red River Valley*, the New Mexico Supreme Court considered whether the owner of the streambeds had exclusive fishing and recreation rights in two non-navigable rivers and a lake created by the construction of a dam. Although the New Mexico Supreme Court held that the *waters* of the rivers and lake were "public waters" under the state constitution and thus open to fishing, the court carefully distinguished between use of the waters and the underlying *land. See* 182 P.2d at 430–31 ("It is well settled in this country, as well as in England, that where the title to the bed of a river is in one owner and the title to the water is in another, the right of fishery follows the title to the water." (quoting *Hartman v. Tresise*, 84 P. 685, 690 (Colo. 1905) (Bailey, J., dissenting)).

34.    *Red River Valley* did not authorize trespass on private lands to engage in fishing and recreation. In an opinion denying a motion for rehearing—joined by the same three justices who joined the majority opinion—the *Red River Valley* court confirmed that "no person has the right to approach public water through private property, or fish in public water while on private property without the consent of the owner." *Id.* at 464. As the court explained, a member of the public "may fish in public water if he does not trespass upon the lands of another; and fishing in public water from a boat is not a trespass upon the property of the owner of the underlying land." *Id.* Walking or wading across privately-held streambeds, on the other hand, was considered trespassing. *Red River Valley* did not recognize any right of the public to walk or wade across privately-owned riverbeds.

35.    The New Mexico Game Commission and the Department of Game & Fish followed suit. In a series of proclamations over the course of many years, the Commission and the Department affirmed that the public had no right to walk or wade on privately-held streambeds. This was the entities' consistent position until the New Mexico Supreme Court issued its *Adobe Whitewater* decision in 2022.

36.    In one representative proclamation issued in 1991—in a section entitled "Private Lands, Trespass, Stream Beds, Access,"—the Department directed the public to "[o]btain permission before fishing on private lands" and warned that "[n]othing in this proclamation will be construed to authorize entry into or onto any privately owned property, *including stream beds*, without the landowner's permission." (emphasis added). Likewise, the 1998 Department proclamation told the public to "obtain permission before entering into or onto private lands, *including streambeds*." (emphasis added). These Proclamations are attached as Exhibits 1 and 2.[4]

37.    The state legislature then confirmed the private owners' right to exclude the public from their private streambeds. In 2015, the legislature enacted a law that declared: "[n]o person engaged in hunting, fishing, trapping, camping, hiking, sightseeing, the operation of watercraft or any other recreational use shall walk or wade onto private property through non-navigable public water or access public water via private property unless the private property owner or lessee or person in control of private lands has expressly consented in writing." N.M. Stat. § 17-4-6(C) (2015).

---

[4] The relevant language is highlighted in the exhibits and can be found on Page 5 of the 1991 Proclamation and Page 8 of the 1998 Proclamation.

38.    In implementing the new statute, the Game Commission issued a regulation that recognized each landowner's right to exclude the public from privately-owned streambeds. The regulation allowed landowners "to be issued a certificate and signage by the director and the commission that recognizes that within the landowner's private property is a segment of a non-navigable public water, whose riverbed or streambed or lakebed is closed to access without written permission from the landowner." N.M. Admin. Code § 19.31.22.6 (2018). The purpose of these Department-issued signs was to serve as "prima facie evidence that the property subject to the sign is private property, subject to the laws, rules, and regulations of trespass." *Id.* § 19.31.22.13(F).

39.    Under the regulation, the Game Commission certified several properties as containing private non-navigable streambeds. This included the Briones property. One of Plaintiff Erik Briones' predecessors-in-interest, a trust established by Kenneth and Julie Hersh, applied for and received certification along with the Department-issued no-trespassing signage. The Jenkins and Rivera properties are immediately alongside the Briones property on the same segment of the Pecos River that the Commission certified as non-navigable as to the Briones property.

40.    Although the other Plaintiffs' streambeds were not certified under the regulation, they are nonetheless private. Title to all the properties at issue can be traced back to land patents from the United States government. In the cases of the Rivera, Briones, and Jenkins parcels, the patent dates back to before New Mexican statehood. New Mexico never took title to the streambeds on Plaintiffs' parcels.

41.    In addition to signs, Plaintiffs have employed various other methods to enforce their right to exclude trespassers from walking and wading on the private streambeds, including fences that block trespassers from wading down the river from adjacent areas where the streambed is

publicly owned—such as state parks. Some Plaintiffs also verbally confronted trespassers in the rivers on their land. None of the river segments on Plaintiffs' properties are actually suitable for boating or rafting. The Rio Tusas on the Sanchez ranch, for example, is no deeper than knee high.

42.    But even after Plaintiffs' property rights were recognized by all three branches of the state government, they were not safe. Several organizations led by the Adobe Whitewater Club of New Mexico brought a mandamus proceeding directly in the New Mexico Supreme Court seeking a declaration that the Game Commission regulation was invalid as contrary to the state constitution's public water clause—the same one the court had interpreted in *Red River Valley*.

43.    In the process of invalidating the Commission's regulation, the New Mexico Supreme Court blew past the limits of *Red River Valley*. Contrary to its prior precedent and the judgment of the legislature and the Game Commission, the court held that the state constitution guarantees the right of the public to walk or wade on privately-held riverbeds simply by virtue of the existing public right to fish or recreate in public waters. *Adobe Whitewater*, 519 P.3d at 53. According to the court, whether the river is navigable actually does not matter, because public rights extend to the beds of non-navigable rivers even where private owners like Plaintiffs hold title to the beds. *Id.* at 54.

44.    Although *Adobe Whitewater* left Plaintiffs and many other New Mexicans with title to their riverbeds, it stripped away their rights to exclude trespassers from walking and wading on those beds. The court's declaration impressed their private property with a public easement for fishing and recreation.

45.    After *Adobe Whitewater*, Defendants took concrete steps to enforce the State's new public easement claims. The Game Commission immediately repealed the regulation that had

certified streambeds as private and issued signage.[5] At the Commission's direction, the Department sent letters to those property owners whose streambeds had been certified as non-navigable under the Commission's regulation. *See id.* In the letters, the Department warned each owner that "the Certificate you were issued is now void." They went on to state that "in accordance with" the *Adobe Whitewater* decision, property owners must "remove any signage referencing the certification and restricting access to the water" and "remove any barriers limiting access to legally accessed water on your property, unless otherwise authorized by law." A copy of one of these letters—addressed to a non-plaintiff property owner that was an intervenor in *Adobe Whitewater*—is attached as Exhibit 3.

46.     The Attorney General, too, has enforced *Adobe Whitewater*'s decree of a public easement across private streambeds. Attorney General Torrez sued Plaintiff Erik Briones and several John Does in state court on the theory that Plaintiff Briones' signage and fencing was restricting public access to the Pecos River—a river that the Game Commission had certified as non-navigable with privately-owned streambeds only a few short years ago. Rather than subject himself to penalties, Plaintiff Briones agreed to remove the wiring on his fencing. Were it not for *Adobe Whitewater*'s decree and the Attorney General's actions, he would assert the traditional right to exclude trespassers from his private streambeds with signage and fencing. A copy of the complaint in this lawsuit is attached as Exhibit 4.

47.     Although they have not yet been named as Defendants in a lawsuit, the other Plaintiffs can no longer enforce the right to exclude that they possessed before *Adobe Whitewater*

---

[5] Press Release, New Mexico Department of Game & Fish, *Game Commission Acts Swiftly Following Supreme Court Ruling*, Mar. 14, 2022, https://www.wildlife.state.nm.us/game-commission-acts-swiftly-following-supreme-court-ruling/.

without fear of enforcement actions. Plaintiffs also can no longer expect State officials to enforce trespass law, or even warn the public against trespassing as the Department used to do in its Fishing Proclamations.[6] Furthermore, Defendant Jenkins has been subject to informal threats of enforcement as one of the "John Does" in the Briones lawsuit.

48.     Plaintiff Rivera owns portions of the bed of the Pecos River adjacent to Plaintiffs Briones and Jenkins, and thus fears enforcement actions will be taken against him if he continues to assert the right to exclude trespassers from walking and wading in the river.

49.     Plaintiffs Lucia and Michael Sanchez have a similar fear. Before *Adobe Whitewater*, either Plaintiffs or their late father, who owned the ranch until his death in 2018, would often meet directly with trespassers to inform them that the streambed was private. But after *Adobe Whitewater*, the Sanchez siblings can no longer tell people walking and wading on their private streambed that they are trespassing, nor can they expect help from Department officials. Instead, they fear consequences from Defendants if they attempt to enforce their traditional right to exclude.

50.     Public access on Plaintiffs' private streambeds has caused Plaintiffs substantial harm. Plaintiff Briones has experienced members of the public wading in the Pecos River harassing his wife while she sits outside their cabin along the river, and Plaintiffs Rivera and Jenkins have also had to give up their privacy when using their properties for recreation with their families—

---

[6] New Mexico law makes "knowingly entering or remaining upon posted private property without possessing written permission from the owner or person in control of the land" a misdemeanor. N.M. Stat. § 30-14-1(A), (E). Since *Adobe Whitewater*, Plaintiffs can no longer rely on the enforcement of this statute.

something they had come to expect in the years before *Adobe Whitewater*. Plaintiff Rivera has observed members of the public littering and bathing nude in the river.

51.      The problem along the Pecos River is exacerbated because the area near Plaintiffs' properties is known as a great fishing spot with exceptionally large and plentiful trout. That the fish are this way is in large part due to improvements made by Plaintiffs. But now that Briones, Jenkins, and Rivera have been deprived of their right to exclude, members of the public come from the public lands and streams nearby to fish and recreate on Plaintiffs' streambeds from the public areas to the north and south of the group of parcels, despite the existence of nearby public fishing areas. The improvements make the private streambeds more desirable, and that brings more members of the public walking and wading on Plaintiffs' private streambeds.

52.      Plaintiffs have experienced members of the public leaving trash behind on their private property. The Sanchez Plaintiffs operate a ranch and their cattle have gotten sick eating what members of the public have left behind on their property. Plaintiffs on the Pecos River have also dealt with members of the public treating their private property as they would a public park, leaving trash behind for Plaintiffs and their family to clean up. Unlike at a public park, there are no government employees whose job it is to clean Plaintiffs' property.

53.      Members of the public also come onto Plaintiffs' streambeds and remove an excessive amount of fish. Plaintiffs take their obligation to be good stewards for the land and the environment seriously. That is why they have invested in improvements that have improved the quality of fishing while maintaining a healthy, stable fish population.

54.      The loss of the right to exclude the public from their private streambeds has also led to liability concerns for Plaintiffs. Because Plaintiffs hold title to the streambeds, they fear

incurring legal liability if a member of the public they would have otherwise not permitted on their private property is injured.

55.    Public fishing areas exist within a mile of the Briones, Jenkins, and Rivera properties along the Pecos River. The Sanchez ranch is surrounded by a National Forest with substantial opportunities for public access. Plaintiffs' ability to exercise the right to exclude trespassers from their private streambeds before *Adobe Whitewater* did not deprive anyone of public fishing areas.

56.    Plaintiffs are not averse to giving some people permission to walk and wade on their private streambeds. For example, Plaintiff Rivera generally asserted his right to exclude trespassers before *Adobe Whitewater*, but when individuals asked him for permission to fish on his section of the Pecos River, he sometimes granted it.

57.    Were it not for the enforcement measures Defendants have taken and threaten to take, Plaintiffs would continue to exercise their right to exclude members of the public from walking and wading on their private streambeds just as they did before *Adobe Whitewater*.

58.    *Adobe Whitewater* purported to transform Plaintiffs' private streambeds into public fishing and recreation areas. Defendants are actively enforcing that decree and the State has not compensated Plaintiffs for the property taken. By enforcing the decree Defendants have effected a taking of Plaintiffs' private property without compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## CAUSE OF ACTION

59.    Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 58 as though fully set forth herein.

17

60.     The Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, prohibits the government from taking "private property . . . for public use, without just compensation."

61.     Defendants are the Attorney General of New Mexico, the seven members of the New Mexico Game Commission, and the Director of the New Mexico Department of Game & Fish. The Attorney General is entrusted with enforcing the laws of New Mexico and has, in his official capacity, enforced the New Mexico Supreme Court's decree that the public has the right to walk and wade across private streambeds for fishing and recreation. He has sued Plaintiff Briones to stop Mr. Briones from exercising his right to exclude trespassers from his private streambed, and seeks to similarly act against other landowners. His office has announced that "it is actively investigating allegations that several landowners continue to block access to rivers and streams in defiance of state law" and that "it is prepared to take formal action to guarantee that all New Mexicans can access public waters for fishing and recreation." *See supra* n.1. He has taken these actions under color of state law within the meaning of 42 U.S.C. § 1983. Further such actions are imminent or likely.

62.     The Game Commission appoints the Director of the New Mexico Department of Game & Fish, sets the Department's policy, and promulgates regulations related to hunting and fishing and related activities in New Mexico. *See supra* ¶ 16. Before *Adobe Whitewater*, the Commission issued certifications to several property owners—including Plaintiff Briones' predecessor-in-interest—that ensured those owners' rights to exclude trespassers from their private streambeds. After *Adobe Whitewater*, the Commission repealed the regulation. Then, under the Commission's direction, the Department that the Director oversees declared these certifications

void and threatened property owners to remove any efforts to enforce their rights to exclude trespassers. In enforcing the *Adobe Whitewater* decree, the Commissioners and the Director act under color of state law within the meaning of 42 U.S.C. § 1983. Further actions prohibiting Plaintiffs and others from exercising their right to exclude are imminent or likely.

63.     The U.S. Supreme Court has held that, consistent with the Fifth Amendment, "a State, by *ipse dixit*, may not transform private property into public property without compensation." *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155, 164 (1980). "The Constitution's text does not limit the Takings Clause to a particular branch of government." *Sheetz v. El Dorado Cnty.*, 601 U.S. 267, 276 (2024). The Takings Clause "constrains the government without any distinction between legislation and other official acts." *Id.* at 277.

64.     The right to exclude is a fundamental aspect of property rights that the government cannot take without just compensation. "[A]ppropriations of a right to invade are *per se* physical takings." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 158 (2021). In enforcing the decree of *Adobe Whitewater* and requiring property owners like Plaintiffs to permit public access to their private streambeds, Defendants have "appropriate[d] for the enjoyment of third parties the owners' right to exclude." *Id.* at 149.

65.     "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019). In enforcing the *Adobe Whitewater* decree, Defendants have taken Plaintiffs' right to exclude the public from walking and wading on Plaintiffs' private streambeds. Neither Defendants nor the State of New Mexico has paid just compensation to Plaintiffs for the property rights

Defendants have appropriated in the name of the State. Therefore, Plaintiffs have an actionable federal takings claim against Defendants.

66.    Defendants are state actors and cannot be sued for damages in federal court. Plaintiffs also lack a remedy in state court, as Defendants' actions are premised on a New Mexico Supreme Court decree. No "adequate provision for obtaining just compensation exists." *Id.* at 201. Plaintiffs thus lack a remedy at law and may seek prospective injunctive and declaratory relief. *See Cedar Point*, 594 U.S. at 179 (Breyer, J., dissenting) (noting that the victorious property owners in *Cedar Point* sought only injunctive and declaratory relief and arguing that the State "should have the choice of foreclosing injunctive relief by providing compensation").

## PRAYER FOR RELIEF

Plaintiffs pray for judgment from this Court as follows:

A.    An entry of a permanent injunction barring Defendants and their subordinates from taking any action preventing Plaintiffs from otherwise lawfully exercising their right to exclude trespassers from walking and wading on Plaintiffs' private streambeds.

B.    An entry of a permanent injunction barring Defendants and their subordinates from penalizing Plaintiffs for taking otherwise lawful action to assert their right to exclude the public from walking and wading on Plaintiffs' private streambeds.

C.    An entry of judgment declaring that Defendants' assertion of public rights to walk and wade across Plaintiffs' private streambeds, as decreed in the New Mexico Supreme Court's *Adobe Whitewater* decision, constitutes a per se taking of Plaintiffs' right to exclude.

D.    An award of attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988.

E.    An award of any further legal or equitable relief this Court may deem just and proper.

DATED: June 25, 2024.

Respectfully submitted,

/s/ Christopher M. Kieser

| | |
|---|---|
| MARK L. ISH | CHRISTOPHER M. KIESER |
| D.N.M. 79/177 | D.N.M. 24-137 |
| N.M. Bar No. 1255 | JEREMY TALCOTT |
| Felker, Ish, Ritchie, Geer & Winter, P.A. | D.N.M. 24-170 |
| 911 Old Pecos Trail | Pacific Legal Foundation |
| Santa Fe, New Mexico 87505 | 555 Capitol Mall, Suite 1290 |
| Telephone: (505) 988-4483 | Sacramento, California 95814 |
| markish@felkerishlaw.com | Telephone: (916) 419-7111 |
| | CKieser@pacificlegal.org |
| | JTalcott@pacificlegal.org |

*Counsel for Plaintiffs*