# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LUCIA F. SANCHEZ; MICHAEL F.
SANCHEZ JR.; ERIK BRIONES;
RICHARD JENKINS; and ROLAND
RIVERA,

                Plaintiffs,

v.                                                                                               No. 24-cv-00646-KWR-LF

RAUL TORREZ, in his official capacity as
Attorney General of New Mexico; RICHARD
STUMP, in his official capacity as Chair of
the New Mexico State Game Commission;
SHARON SALAZAR HICKEY, in her
official capacity as Vice-Chair of the
New Mexico State Game Commission;
TIRZIO LOPEZ, in his official capacity as a
member of the New Mexico State Game
Commission; GREGG FULFER, in his
official capacity as a member of the
New Mexico State Game Commission;
DR. SABRINA PACK, in her official
capacity as a member of the New Mexico
State Game Commission; EDWARD
GARCIA, in his official capacity as a member
of the New Mexico State Game Commission;
FERNANDO CLEMENTE JR., in his official
capacity as a member of the New Mexico
State Game Commission; and MICHAEL
SLOANE, in his official capacity as Director
of the New Mexico Department of Game &
Fish,

                Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants' motion to dismiss, Doc. 16. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well taken, and therefore, is **GRANTED**. The case is dismissed without prejudice.

### BACKGROUND

The New Mexico Constitution declares that "[t]he unappropriated water of every natural stream . . . within the state of New Mexico . . . [b]elong[s] to the public and [is] subject to appropriation for beneficial use." N.M. Const. art. XVI, § 2. It is well settled that this provision protects the right to recreate and fish in public waters. *See State ex rel. State Game Comm'n v. Red River Valley Co.*, 182 P.2d 421, 428–29 (N.M. 1945).

In 2022, the New Mexico Supreme Court held that "the right to recreate and fish in public water also allows the public the right to touch the privately owned beds below those waters." *Adobe Whitewater Club of N.M. v. N.M. State Game Comm'n*, 519 P.3d 46, 49 (N.M. 2022). In its view, "[w]alking and wading on the privately owned beds beneath public water is reasonably necessary for the enjoyment of many forms of fishing and recreation." *Id.* at 53. It made clear, however, that "the public may neither trespass privately owned land to access public water, nor trespass on privately owned land from public water." *Id.*

Plaintiffs are property owners in San Miguel and Rio Arriba Counties. Compl. ¶ 4. Their properties include the streambeds of the Pecos and the Rio Tusas. Compl. ¶¶ 4, 10–14. These streambeds are among those subject to appropriation for public use.

After the *Red River* decision and until *Adobe Whitewater*, "[w]alking or wading across privately-held streambeds . . . was considered trespassing." Compl. ¶ 34. The New Mexico Game

2

Commission and Department of Game & Fish consistently affirmed that "the public had no right to walk or wade on privately-held streambeds." Compl. ¶ 35. In 2015, the state legislature enacted a law declaring that "[n]o person engaged in hunting, fishing, trapping, camping, hiking, sightseeing, the operation of watercraft or any other recreational use *shall walk or wade onto private property through non-navigable public water* or access public water via private property unless the private property owner or lessee or person in control of private lands has expressly consented in writing." N.M. Stat. Ann. § 17-4-6(C) (2015) (emphasis added). The Game Commission thereafter "issued a regulation that recognized each landowner's right to exclude the public from privately-owned streambeds." Compl. ¶¶ 38–39. *Adobe Whitewater*, however, rejected this understanding and removed the right to exclude trespassers from walking and wading on private streambeds.

After *Adobe Whitewater*, Defendants took steps to enforce the decision. The Game Commission repealed the regulation recognizing landowners' right to exclude the public. Compl. ¶ 45. The Department sent letters warning Plaintiffs that property owners must remove signage and anything restricting access to waters. Compl. ¶ 45. The Attorney General sued Plaintiff Briones in state court, alleging that their signage and fencing impermissibly restricted access to the Pecos River. Compl. ¶ 46. Attorney General Torrez's office also "announced that 'it is actively investigating allegations that several landowners continue to block access to rivers and streams in defiance of state law' and that 'it is prepared to take formal action to guarantee that all New Mexicans can access public waters for fishing and recreation.'" Compl. ¶ 61.

To date, the State has not brought an enforcement action against the Sanchez's, Jenkins, or Rivera. Compl. ¶ 47. Each Plaintiff, however, fears that enforcing their perceived right to exclude the public from their streambeds will be met with a state enforcement action. Compl. ¶¶ 47–49.

3

Plaintiffs now sue Defendants in their official capacities. Compl. ¶¶ 15–23. Defendants include: the Attorney General of New Mexico (Raul Torrez); the Chair and Vice-Chair of the New Mexico State Game Commission (Richard Stump and Sharon Salazar Hickey); members of the New Mexico State Game Commission (Tirzio Lopez, Gregg Fulfer, Dr. Sabrina Pack, Edward Garcia, and Fernando Clemente Jr.); and the Director of the New Mexico Department of Game & Fish (Michael Sloane). Compl. ¶¶ 15–23.

Plaintiffs bring their claims under the Fifth Amendment of the United States Constitution, alleging that Defendants took their property without paying just compensation. Compl. ¶¶ 60–66.[1] Plaintiffs seek a permanent injunction barring Defendants from taking future actions to prevent Plaintiffs from excluding trespassing from walking and wading on their private streambeds; a permanent injunction barring Defendants from penalizing Plaintiffs for excluding members of the public walking and wading on their private streambeds; and a declaratory judgment "that Defendants' assertion of public rights to walk and wade across Plaintiffs' private streambeds, as decreed in the . . . *Adobe Whitewater* decision, constitutes a per se taking of Plaintiffs' right to exclude." Compl. ¶¶ A–C.

Defendants thereafter moved to dismiss the suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 16 at 3. As two bases for dismissal, Defendants assert that Plaintiffs lack standing and that Eleventh Amendment sovereign immunity bars suit. *See* Doc. 16 at 4, 15.

---

[1] No Plaintiff here was a party to *Adobe Whitewater* which, in addition to its holding interpreting the state constitution, held that its decision was not a taking. *See* 519 P.3d at 57.

## DISCUSSION

The Court must decide whether dismissal is proper under Federal Rules of Procedure 12(b)(1) or 12(b)(6). The Court finds that Plaintiffs' complaint insufficiently alleges subject matter jurisdiction, and therefore, the case must be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

I. **Legal Standard**

Federal courts can dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction" or "(2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). Here, Defendants' Rule 12(b)(1) motion constitutes an attack on the facial sufficiency of the complaint's allegations as to subject matter jurisdiction, and as a result, the Court "presume[s] all of the allegations contained in the . . . complaint to be true." *Id.*

II. **Analysis**

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. In deciding whether a taking occurred, the Court is confronted with complex questions including whether to recognize a "judicial takings" theory, *see Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010) (plurality opinion) ("If a legislature *or a court* declares that what was once an established right of private property no longer exists, it has taken that property . . . ." (emphasis added)), and whether a state court's interpretation of its constitution meets this standard. *See* Doc. 16 at 22; Doc. 22 at 20.

But the Court need not decide either question. Instead, the Court finds that it lacks jurisdiction over this case for two reasons. First, Plaintiffs cannot establish Article III standing. *See infra* section A. Second, Plaintiffs insufficiently allege that Eleventh Amendment sovereign immunity does not bar relief. *See infra* section B.  Accordingly, the Court must grant Defendants' motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1).

    A. <u>Plaintiffs lack standing to seek a permanent injunction against the named state executive officials</u>.

The Court finds that Plaintiffs lack standing to enjoin the named state officials from enforcing the New Mexico Supreme Court's decision in *Adobe Whitewater* without providing compensation. "Article III standing requires the plaintiff to 'have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The party invoking federal jurisdiction has the burden of establishing standing separately for each form of relief sought. *See WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012); *Spokeo*, 578 U.S. at 338.

The Court finds that all Plaintiffs suffered an injury in fact because each "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Though some Plaintiffs have not yet faced an adverse action by the State, the Court finds that they may seek prospective relief against enforcement because each is confronted with a credible threat of prosecution. *See Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (explaining that a plaintiff "can sue for prospective relief against enforcement" so long as "he can show that he faces a 'credible threat of prosecution'"); *Susan B.*

6

*Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("[A]n actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."). Plaintiffs allege that "Attorney General Torrez's office has taken active steps to enforce the New Mexico Supreme Court's decree" against similarly situated landowners who do not permit public access to their streambeds, including Plaintiffs in this case. Compl. ¶¶ 15, 61. This presents a sufficiently credible threat of prosecution to justify prospective relief.

Plaintiffs, however, cannot meet standing's remaining requirements. First, Plaintiffs cannot demonstrate that an injunction is likely to redress their injury. *See WildEarth*, 690 F.3d at 1182. Second, Plaintiffs cannot show that their injury is "fairly traceable to the challenged conduct of the defendant." *See Baker*, 970 F.3d at 871. As a result, the Court lacks jurisdiction to grant the relief sought. *See Lujan*, 504 U.S. at 559–60; *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982).

> 1. *Plaintiffs' injuries are not redressable through prospective injunctive or declaratory relief.*

Plaintiffs cannot demonstrate that it is likely their injury will be redressed by a favorable decision. *See Baker*, 979 F.3d at 871. "To demonstrate redressability, a party must show that a favorable court judgment is likely to relieve the party's injury." *WildEarth*, 690 F.3d at 1182 (citation and internal quotations omitted). "The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Id.* (citation and internal quotations omitted). "A showing that the relief requested *might* redress the plaintiff's injuries is generally insufficient to satisfy the redressability requirement . . . ." *Id.* (citation omitted) (emphasis original).

Plaintiffs seek an injunction restraining Defendants from maintaining the public right of access to (or, in Plaintiffs' view, preventing or penalizing their right to exclude trespassers from)

7

the streambeds on Plaintiffs' land without providing just compensation. Compl. ¶¶ A–C. In other words, Plaintiffs want to prevent state officials from enforcing the New Mexico Supreme Court's decision interpreting its constitution in *Adobe Whitewater*. This injunction, however, would not redress Plaintiffs' injury. *See Lujan*, 504 U.S. at 568–69.

The New Mexico Constitution guarantees to the public a right to recreate in public waters, which includes the streams touching Plaintiffs' property. N.M. Const. art. XVI, § 2; *Red River*, 182 P.2d at 225–26. In *Adobe Whitewater*, the New Mexico Supreme Court explained that this right includes a "privilege to do such acts as are reasonably necessary to effect the enjoyment of such right, and that incident to this guarantee is the right to "walk[] and wad[e] on privately owned [streambeds]." 519 P.3d at 53. Accordingly, the New Mexico Constitution itself forbids landowners from excluding members of the public from their streambeds.

Even if the Court were to grant this relief against State officials and the officials were to cease its enforcement, the public would still have a right to access privately-owned streambeds and Plaintiffs would continue to lack both compensation and a legal remedy to restrict public access.[2] Furthermore, even if State executive officials decided to forego enforcing state law themselves and the landowners were to subsequently impede public access to their streambeds, the public has other ways to preserve its constitutional right to recreate in public waters (for example, by court order or going to the local sheriff). Indeed, "non-enforcement will not change the content of the underlying law itself." *See Pavlock v. Holcomb*, 35 F.4th 581, 590 (7th Cir. 2022).

---

[2] Plaintiffs could argue that the State officials are compelled by their obligation to uphold the State's constitution to enforce the public's right to access these waters, and as a result, must compensate Plaintiffs for a taking (therefore remedying their injury). But if the Court were to assume that such executive action was compelled, the relief requested would run into other problems. *See infra* section B.1.

In short, Plaintiffs' injury—New Mexico's interference with their ability to exclude the public from their streambeds—can only be remedied by changing the law to the pre-*Adobe Whitewater* status quo. Absent constitutional amendment or the New Mexico Supreme Court reversing its position, landowners remain powerless to remove members of the public from their streambeds with or without executive enforcement, and therefore, their injury will remain.

    2. *Plaintiffs' injury is not fairly traceable to Defendants' conduct.*

As established *supra*, Plaintiffs lack standing because they cannot demonstrate the redressability requirement. Plaintiffs also cannot establish standing's causation requirement, or that their injury is "fairly traceable to the challenged conduct of the defendant," *see Baker*, 970 F.3d at 871, and "not the result of the independent action of some third party not before the court," *see Lujan*, 504 U.S. at 560 (citation omitted) (cleaned up).

To reiterate, Plaintiffs lost their right to exclude the public from their private streambeds not because of any action taken by the state official defendants. Instead, their streambeds are open to the public because the New Mexico Supreme Court—an independent third party—decided that its constitution required it. *See Pavlock*, 35 F.4th at 590. The action or inaction of state officials has no bearing on Plaintiffs' ability to exclude the public from their streambeds. While Plaintiffs suggest that they are harmed by regulatory actions conducted in *Adobe Whitewater*'s stead, *see* Compl. ¶ 62, these actions simply reflect what the officials are constitutionally required to do. In other words, Defendants' enforcement will not cause any further injury not already incurred from the New Mexico Supreme Court's decision in *Adobe Whitewater*.

  B. <u>Eleventh Amendment sovereign immunity bars this suit</u>.

As established above, the Court does not have jurisdiction because Plaintiffs cannot establish standing. Eleventh Amendment sovereign immunity also precludes this Court's

jurisdiction. *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558 (10th Cir. 2000) ("[I]n substance, the Eleventh Amendment constitutes a bar to federal subject matter jurisdiction."); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

"The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). It provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "This immunity extends to suits brought by citizens against their own state," including "suits against a state official in his or her official capacity." *Hendrickson*, 992 F.3d at 965 (cleaned up) (citations and internal quotations omitted). But "Eleventh Amendment immunity 'is not absolute.'" *Id.* (citation omitted). "Under the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Id.* (citations omitted).

Yet *Ex parte Young* remains the exception, not the rule. *See generally Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (*VOPA*) (explaining that the *Ex parte Young* exception is a legal fiction "rest[ing] on the premise . . . that when a federal court commands a state official to do *nothing more* than refrain from violating federal law, he is not the State for sovereign-immunity purposes." (emphasis added)); *Ruiz*, 299 F.3d at 1180 ("With certain limited exceptions, the Eleventh Amendment prohibits a citizen from filing suit against a state in federal court." (citation omitted)). Even if *Ex parte Young*'s technical requirements are met, sovereign immunity may still bar suit.

Two limitations are relevant here. First, sovereign immunity bars suits against state officials when the relief sought would "impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 666 (1974); *see also VOPA*, 563 U.S. at 256–57 ("*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury . . . ."). Second, takings claims against states are barred by the Eleventh Amendment if "a remedy is available in state court" and is unexhausted. *See Williams v. Utah Dep't of Corrs.*, 928 F.3d 1209, 1213–14 (10th Cir. 2019). In short, the Court finds that these doctrines bar relief. *See generally Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 553 (4th Cir. 2014) ("[W]e note that every other court of appeals to have decided the question has held that the Takings Clause does not override the Eleventh Amendment.") (collecting cases); *Williams*, 928 F.3d at 1213 (rejecting the argument "that the Eleventh Amendment does not apply to Fifth Amendment takings claims").

1. *The equitable relief sought would impermissibly require the payment of funds from the State's treasury.*

As discussed *supra* section A.1, enjoining state executive officials from enforcing the *Adobe Whitewater* decree does not redress the injury alleged because Plaintiffs would continue to lack the ability to exclude members of the public from their private streambeds with or without executive enforcement. But if we assume that executive officials have no choice but to continue enforcing the public's constitutional right to recreate in public waters and that this enforcement constitutes a taking (requiring compensation, and a result, remedying Plaintiffs' injury), the injunction effectively (and impermissibly) requires the payment of funds from the State's treasury.[3]

---

[3] "Every person elected or appointed to any office shall, before entering upon his duties, take and subscribe to an oath or affirmation that he will support the constitution of the United States and

"It is . . . well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663. "[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984). In other words, *Ex parte Young* "does not apply 'when the state is the real, substantial party in interest, . . . as when the 'judgment sought would expend itself on the public treasury or domain.'" *VOPA*, 563 U.S. at 255 (citing *Pennhurst*, 465 U.S. at 101); *see also Edelman*, 415 U.S. at 663. This remains the case regardless of "whether [a suit against state officials] seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101–02; *see also VOPA*, 563 U.S. at 256–57 ("*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury . . . ." (citing *Edelman*, 415 U.S. at 666)). Indeed, "the 'general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought.'" *VOPA*, 563 U.S. at 256 (citing *Pennhurst*, 465 U.S. at 107) (emphasis added).

The Court finds that the Eleventh Amendment bars Plaintiffs' takings claim because, if we assume that executive officials are bound to continue enforcing *Adobe Whitewater*'s constitutional decree, the injunctive and declaratory relief sought has the effect of requiring the payment of funds from New Mexico's treasury. Plaintiffs' relief requires the Court to hold that the named state executive officials' enforcement of *Adobe Whitewater* is a taking. *See* Compl. ¶¶ A–C. When a taking occurs, the constitution requires states to provide "just compensation." U.S. Const. amend. V. Accordingly, if the state officials, acting in their official capacity, continue to enforce *Adobe*

---

the constitution and laws of this state, and that he will faithfully and impartially discharge the duties of his office to the best of his ability." N.M. Const. art. XX, § 1.

*Whitewater* after the Court grants the relief requested, New Mexico must compensate Plaintiffs. It seems clear, therefore, that the effect of "obtain[ing] an injunction" in this case is to "require[e] the payment of funds from the State's treasury." *See VOPA*, 563 U.S. at 256–57.

This conclusion, though previously unaddressed in the Tenth Circuit, best follows sovereign immunity principles. It is well established that the *Ex parte Young* exception is not inapplicable simply because the equitable relief granted has some effect on a state's treasury. *See Edelman*, 415 U.S. at 667–68 ("*Ex parte Young* was not totally without effect on the State's revenues . . . [l]ater cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*."). To determine whether the effect on the state's treasury implicates sovereign immunity, courts have distinguished between injunctions granting prospective relief and those granting retroactive relief. *See, e.g.*, *id.* at 667–68 ("[T]he fiscal consequences to state treasuries in [cases rejecting claims of sovereign immunity] were the necessary result of compliance with decrees which by their terms were prospective in nature."); *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1390 (2021) (explaining that *Ex parte Young* is inapplicable to the takings claim at issue because "none of the relief Plaintiffs seek is prospective"); *Pharm. Rsch. and Mfgs. Of Am. v. Williams*, 64 F.4th 932, 950 (8th Cir. 2023) ("[W]hile the property owners in *Ladd* sought 'compensation for damage . . . *already caused*,' 971 F.3d at 581, [the plaintiff here] alleged that the takings are ongoing . . . ." (emphasis original)). Plaintiff relies on this distinction to evade sovereign immunity. *See* Doc. 22 at 9. But a closer look reveals that the dichotomy simply operationalizes broader sovereign immunity principles. *See generally Pennhurst*, 465 U.S. at 106 ("*Edelman*'s distinction between prospective and retroactive relief fulfills the underlying purpose of *Ex parte Young* while at the same time preserving to an important degree the constitutional immunity of the States.").

The grant of equitable relief for past conduct is impermissible because the state cannot unring the bell—that is, it has no chance to mitigate the exposure to its treasury resulting from its unconstitutional conduct. *See Edelman*, 415 U.S. at 668 ("While the Court of Appeals described this retroactive award of monetary relief as a form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State."). This reflects the founding principle that "States would remain immune from federal suit . . . absent their consent." *See Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (citing *Edelman*, 415 U.S. at 660, n.9). On the other hand, granting prospective equitable relief does not implicate the same sovereign immunity concerns because the state can avoid liability to the plaintiff(s) by changing how it operates going forward; in most cases, the monetary burden on the treasury comes from the state having to "shape their official conduct to the mandate of the Court's decrees," which results in only an "ancillary [and "often inevitable"] effect on the state treasury." *See Edelman*, 415 U.S. at 668. In other words, the overarching principle can be described as one of agency: is the monetary burden imposed on the state for constitutional violations unavoidable, or is the state free to alter its presently unconstitutional course of conduct to avoid liability in the future?

While the injunctive relief here is prospective in name, the cases referenced above—unlike the present case—do not discuss explicit state constitutional mandates. *Cf. Williams*, 64 F.4th at 950 (explaining that after granting injunctive relief, the state is afforded "the opportunity to repeal its law and reverse the unconstitutional taking"). If, as the Court assumes for this discussion, state executive officials are required to execute (and have no power to change) their state's constitutional commands (in other words, they *cannot* change their course of conduct to avoid a taking), the result more closely resembles that of retrospective equitable relief because it "is in

14

practical effect indistinguishable . . . from an award of damages against the State." *Edelman*, 415 U.S. at 668; *see also generally City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710–11 (1999) ("[J]ust compensation is, like ordinary money damages, a compensatory remedy.").

In short, the Court concludes that granting the equitable relief requested under these circumstances would impermissibly "impose a liability which must be paid from public funds in the state treasury," and therefore, the Eleventh Amendment bars relief. *See Edelman*, 415 U.S. at 663.

2. *Plaintiffs' takings claim is barred because they did not exhaust state court remedies.*

The Eleventh Amendment bars Plaintiffs' claim for another reason: The takings claim was not first brought in state court. *See Williams*, 928 F.3d at 1213–14 ("A claim under the Fifth Amendment Takings Clause is barred by Eleventh Amendment immunity . . . as long as a remedy is available in state court.") (collecting cases); *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."), *overruled in part by Knick v. Township of Scott, Pa.*, 588 U.S. 180 (2019).[4] Recognizing this obstacle, Plaintiffs argue

---

[4] New Mexico courts provide ample takings remedies. *See* Doc. 28 at 14. New Mexico courts provide a forum for property owners to pursue takings claims. *See* N.M. Const. art. VI, § 13. Plaintiffs could have brought a federal takings claim in state court. *See Carter v. City of Las Cruces*, 915 P.2d 336, 338 (N.M. 1996) ("It is well settled that state and federal courts share concurrent jurisdiction over § 1983 claims for the denial of constitutional rights."). Furthermore, the New Mexico Constitution has a takings clause paralleling the United States Constitution. N.M. Const. art. II, § 20. New Mexico also recognizes and allows adverse condemnation proceedings in its courts. N.M. Stat. Ann. § 42A-1-29. The Supreme Court has recognized that an adverse condemnation cause of action is an adequate vehicle to pursue takings claims and receive just compensation. *See DeVillier v. Texas*, 601 U.S. 285, 293 (2024).

that the Eleventh Amendment's exhaustion requirement is excused in this case because pursuing their takings claim in state court is futile. Doc. 22 at 12 n.4; *see Kolton v. Frerichs*, 869 F.3d 532, 535–36 (7th Cir. 2017) ("We do not read [the state court exhaustion requirement] to require resort to state court when state law unequivocally denies compensation."). Namely, Plaintiffs point to the *Adobe Whitewater* decision itself and its conclusion that no taking occurred. 519 P.3d at 57–58.

*Adobe Whitewater*, in addition to involving different parties, did not rule on the precise takings question before this Court. In *Adobe Whitewater*, the New Mexico Supreme Court found that no judicial taking occurred when it interpreted its state constitution to give "the public [a] right to engage in such acts that utilize public water and are reasonably necessary for the enjoyment of fishing and recreation." 519 P.3d at 57. In other words, *Adobe Whitewater* rejected a claim for retroactive relief. Here, Plaintiffs only seek prospective injunctive and declaratory relief. *See* Doc. 22 at 13. In short, the takings question presented in this case has not yet been addressed by the New Mexico Supreme Court.

Plaintiffs also do not identify any controlling law applying the futility exception under these circumstances. Indeed, the "critical issue . . . for purposes of determining whether state courts are open to Takings Clause claims is whether state law recognizes a cause of action for a takings claim," and "do not turn on whether a plaintiff is likely to succeed in federal court." *See Gerlach v. Rokita*, 95 F.4th 493, 499 (7th Cir. 2024) (collecting cases). To this point, the Tenth Circuit omitted any reference to futility when discussing whether an adequate takings remedy was available in state court. *See Williams*, 928 F.3d at 1213–14. The Court also notes that enforcing the exhaustion requirement does not foreclose federal court relief permanently; a takings claim can

16

be brought in federal court once Plaintiffs have "used the procedure and been denied just compensation." *See Williamson Cnty.*, 473, U.S. at 195.

The Court finds that Plaintiffs failure to exhaust state court remedies triggers Eleventh Amendment sovereign immunity, and therefore, bars relief.

## CONCLUSION

In sum, the Court finds that it lacks jurisdiction because Plaintiffs cannot establish Article III standing and Eleventh Amendment sovereign immunity bars relief. Accordingly, Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Doc. 16, is **GRANTED**. The case is dismissed without prejudice.

It is **SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE